UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

    DONALD J. JENKINS, SR.,                  Chapter 7
                                                                  Case No.: 05-73127

                                      *Debtor*.
_____

APPEARANCES:

Carol Malz, Esq.
*Attorney for Debtor*
554 Main Street, P.O. Box 1446
Oneonta, New York 13820

The Law Firm of Frank W. Miller                  Frank W. Miller, Esq.
*Attorneys for Otsego County and*
*Otsego County Department of*
*Social Services*
6575 Kirkville Road
East Syracuse, New York 13057

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Debtor Donald J. Jenkins, Sr. ("Debtor") and his wife, Madeline F. Jenkins, filed a voluntary petition for Chapter 13 relief on October 16, 2005, one day prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[1] Debtor's case is, therefore, governed by pre-BAPCPA Title 11, 11 U.S.C. §§ 101–1330 (2004) (the "Bankruptcy Code").[2]

---

[1] On October 18, 2007, Debtor and Ms. Jenkins moved to sever their jointly-filed Chapter 13 case. (ECF No. 64.) In so doing, Debtor and Ms. Jenkins represented that Debtor would remain in Chapter 13 in order to pay child support arrears through the Chapter 13 plan confirmation process, while Ms. Jenkins would convert to Chapter 7. The Court granted their motion for severance by Order dated November 8, 2007. (ECF No. 64.) Debtor, therefore, is the sole movant in the matter *sub judice*.

[2] All statutory references herein are to the same, unless otherwise noted.

Presently before the Court is Debtor's motion pursuant to §§ 105(a) and 362(h), filed January 2, 2011 (the "Motion," ECF No. 131), asking that the Otsego County Department of Social Services or, more specifically, the Otsego County Support Collection Unit (the "County") and Barbara Snyder ("Snyder"), the mother and custodial parent of two of Debtor's minor children, be held in civil contempt for violating both (1) a prior order of this Court granting an injunction restraining the County and Snyder from making any effort to enforce collection of pre-petition child support arrears and (2) the automatic stay provisions of § 362. Specifically, Debtor seeks an order finding the County and Snyder jointly and severally liable for the alleged violations and awarding actual damages, including, but not limited to, attorney's fees, costs, and compensation for emotional distress, punitive damages, and contempt sanctions. The County has appeared in this matter to oppose the Motion. Snyder has not separately appeared, despite having been served with the motion on January 8, 2011.[3]

The Motion was returnable on the Court's regular motion calendar in Binghamton, New York on February 3, 2011, but it was adjourned on the consent of all parties to March 3, 2011, at which time the Court heard oral argument. The matter was continued and again heard on April 7, 2011. A subsequent telephonic conference was held on the Court's own initiative on May 23, 2011, at which time the Court requested further clarification from the parties regarding certain findings included in the state court record upon which the Motion is premised. Following the May 23, 2011 telephonic conference, the parties were afforded an opportunity to submit supplemental memoranda of law to specifically address how the state court arrived at the fixed amount for child support arrears, which Debtor claims is, in part, comprised of pre-petition arrears due. Having now considered the Motion, the parties' oral arguments, memoranda of law,

---

[3] The Court notes that the address listed for Snyder on the Certificate of Service filed with the Motion is identical to that used by Snyder on documents she filed in state court proceedings, which have been submitted by the County for this Court's review in this matter.

and supplemental memoranda of law, the Court now makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over the parties and the subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and 157(b)(2)(A).

## FACTS

*I.     Bankruptcy-Related History*

At the time of filing, Debtor estimated that he owed approximately $4,200.00 in child support arrears to Snyder.  On April 18, 2006, Retired Chief Judge Stephen D. Gerling signed an Order of Confirmation, which included a priority claim in that amount for Snyder.  (ECF No. 23.)  On August 17, 2006, the County filed a proof of claim on Snyder's behalf, reducing the amount owed to $3,722.70.  In February 2007, Debtor sought and obtained an injunctive order from this Court restraining the County and Snyder from taking any action to enforce collection of pre-petition child support arrears, including through the continuation of an action then pending in the Otsego County Family Court (the "Family Court").  After hearing the matter and having considered written opposition submitted by the County, as well as a reply submitted by Debtor, Retired Chief Judge Gerling entered an Order on February 15, 2007 (the "Bankruptcy Order," ECF No.  42), upon finding that Debtor was, according to the County's accounting, at most $166.90 behind in post-petition child support and "that the dispute on the post-petition child support may [have been] a pretext for incarcerating . . . Debtor for pre-petition arrears." Accordingly, Retired Chief Judge Gerling restrained and enjoined the County and Snyder from "taking any further action to enforce collection of the pre-petition child support arrears."

During the course of Debtor's Chapter 13 case, the Chapter 13 Trustee ("Trustee") made twelve disbursements to the County in full satisfaction of the priority claim filed by the County of behalf of Snyder. The disbursements were made and cleared as follows:

| DATE | AMOUNT | CLEARED |
| --- | --- | --- |
| 04/12/2007 | $57.05 | 05/04/2007 |
| 06/08/2007 | $156.88 | 07/05/2007 |
| 12/13/2007 | $40.01 | 12/28/2007 |
| 01/10/2008 | $85.33 | 01/23/2008 |
| 02/07/2008 | $53.73 | 03/07/2008 |
| 03/13/2008 | $107.44 | 04/02/2008 |
| 04/10/2008 | $71.62 | 04/28/2008 |
| 05/08/2008 | $501.55 | 05/27/2008 |
| 06/12/2008 | $286.68 | 07/02/2008 |
| 07/10/2008 | $159.66 | 07/30/2008 |
| 08/07/2008 | $852.14 | 08/29/2008 |
| 10/06/2009 | $1,350.61 | 10/26/2009 |

(Debtor's Reply, Ex. 1, ECF No. 139.)

On June 23, 2010, Debtor converted from Chapter 13 to Chapter 7. As a result of a child support enforcement action described in more detail below, on August 9, 2010, when Debtor appeared for his § 341 Meeting of Creditors in his post-conversion Chapter 7 case, he was arrested and immediately incarcerated.

II.    *Non-Bankruptcy Related History*

Beginning in February 2009, Snyder, with the assistance of the County, filed a series of modification and violation petitions with regard to child support in the Family Court. On April 24, 2009, the Honorable Richard E. Brown, Support Magistrate, issued an Order of Disposition (the "April 2009 Support Order," Feb. 18, 2011 Aff. of Lisa Grampp ("Grampp Aff."), Ex. D, which is docketed together with the Answer to Pet. by Otsego Cnty., ECF No. 138), modifying a prior 1998 child support order issued by the Family Court and establishing Debtor's weekly child support payment in the amount of $160.00, effective February 17, 2009. The April 2009 Support Order also determined that Debtor owed $2,970.00 in medical arrears, and found that his pro rata share of the children's uninsured medical expenses would be 58%, effective February 17, 2009. It did not, however, find or fix an amount for child support arrears due.

On June 16, 2009, Snyder, with the assistance of the County, filed an amended violation petition more fully captioned as an "Amended Petition for Violation of Support Order (Individual)" (the "Amended Violation Petition," Grampp Aff., Ex. E), alleging, *inter alia*, child support arrears due in the amount of $1,634.00. Pursuant to the County's payment history submitted in connection with the Motion, as of July 22, 2009, total arrears–child support and medical support combined–amounted to $6,687.27. (May 31, 2011 Supplemental Aff. of Lisa Grampp ("Supplemental Grampp Aff.") ¶ 6, Ex. 4, ECF No. 149.) The Amended Violation Petition ultimately resulted in the issuance by Support Magistrate Brown of a July 23, 2009 Order more fully captioned as "Finding of Fact and Order of Disposition (Violation of Support Order by Default)" (the "July 2009 Violation Order," Grampp Aff., Ex. I), holding Debtor to be in violation of the April 2009 Support Order. Specifically, the July 2009 Violation Order provided in relevant part:

> IT IS ORDERED that child support arrears are fixed in the amount of $3,242.00. On or before September 1, 2009, and in addition to regular weekly support payments, respondent shall pay the sum of $1,500.00 against arrears. Should respondent fail to make these payments IT IS RECOMMENDED that [Debtor] be committed in County jail, for a period of six months, subject to confirmation by a Judge of this Court . . . .

(*Id.*)

On September 23, 2009, Magistrate Brown issued a subsequent Order more fully captioned as "Finding of Fact and Order of Disposition (Violation of Support Order) By Default" (the "September 2009 Violation Order," Grampp Aff. Ex. I), again holding Debtor to be in violation of the April 2009 Support Order. Based upon the testimony of a County representative, as of July 23, 2009, Debtor owed $3,240.00 in child support arrears and $3,445.27 in medical support arrears. (*Id.*) Pursuant to the County's payment history referenced above, as of September 22, 2009, total arrears–child support and medical support combined–amounted to $7,933.80. (Supplemental Grampp Aff. ¶ 8, Ex. 4.) Accordingly, the September 2009 Violation Order provided in relevant part:

> IT IS ORDERED that child support arrears are fixed in the amount of $3,240. On or before September 1, 2009, and in addition to regular weekly support payments [in the amount of $160.00], respondent shall pay the sum of $1,500.00 against arrears. Should respondent fail to make these payments IT IS RECOMMENDED that Donald J. Jenkins[,] Sr. be committed to County jail, for a period of six months, subject to confirmation by a Judge of this Court . . . .

(*Id.*)

As is required by § 439(a) of the New York Family Court Act, the matter was then referred for confirmation and the imposition of punishment to the Honorable Brian D. Burns, Acting Supreme Court Justice, who issued a September 23, 2009 Order more fully captioned "Order Upon Support Magistrate Determination of Willfulness" (the "September 2009 Order," Feb. 21, 2011 Aff. of Stephen F. Baker ("Baker Aff."), Ex. F, which is docketed together with

the Answer to Pet. by Otsego Cnty., ECF No. 138), finding Debtor to be in willful contempt of prior Family Court orders. The September 2009 Order further committed Debtor to the custody of the Otsego County Sheriff for 180 days, subject to Debtor being released earlier in the event he purged the contempt by paying the arrears. An Order of Commitment was issued by the court on the same date, and transmitted to the Otsego County Sheriff's Department. (*Id.*, Ex. G.). On September 24, 2009, the Family Court issued a Warrant of Arrest to the Otsego County Sheriff's Department for Debtor's arrest. (Grampp Aff., Ex. K.). Following Debtor's arrest, he was detained in the Otsego County Correctional Facility in Cooperstown, New York for more than two weeks.

During Debtor's incarceration, he filed a habeas corpus petition, but he was released from jail upon reaching a settlement with the County before the petition was decided, causing the Honorable Robert C. Mulvey, Supreme Court Justice, to issue a letter decision and order on August 25, 2010 ("August 2010 Order," Grampp Aff., Ex. L), therein rendering the petition moot.

## ARGUMENTS

Debtor contends that he is entitled to actual and punitive damages under both §§ 105(a) and 362(h) because the County and Snyder caused or allowed for pre-petition arrears in the amount of $1,350.61 to be included in the Violation Petition before the Family Court, notwithstanding their respective knowledge of the Bankruptcy Order and of the commencement and continuation of the automatic stay due to Debtor's bankruptcy filing. According to Debtor's calculations, as set forth in his counsel's Affirmation filed June 2, 2011 (Malz Affirmation, ECF No. 150), the Violation Petition necessarily included pre-petition arrears in the amount of $1,634.00 because, as of February 2009, Debtor was current post-petition with his $36.00 per

week child support obligation (*id.* ¶ 10). Thus, Magistrate Brown did not determine an amount for post-petition child support arrears in the April 2009 Support Order (*id.* ¶ 11), but instead he provided for an increase in Debtor's weekly child support obligation to $160.00, retroactive to February 17, 2009. (*Id.* ¶ 12.) Debtor asserts that even with the new retroactive obligation of $160.00 per week from February 17, 2009, through July 17, 2009, when Magistrate Brown issued the July 2009 Violation Order, the Family Court could not have arrived at the child support arrears amount of $3,242.00, unless that amount included the pre-petition arrears. Debtor further emphasizes that the September 2009 Violation Order also found a violation of child support, rather than medical support, arrears. (*Id.* ¶ 13.) Debtor emphasizes that the Trustee received scheduled child support payments directly from Debtor's employer, but payments were not made by the Trustee in regular intervals to the County or Snyder. (*Id.* ¶ 19.) Specifically, Debtor suggests that the County and Snyder included pre-petition child support arrears in an amount equal to or greater than the final Trustee payment because there had been a significant delay of fourteen months between the August 2008 payment and the October 2009 final lump sum payment made by the Trustee. Debtor also takes issue with the County and Snyder's collective failure to inform the Family Court that $1,350.81 was forthcoming from the Trustee, which would have satisfied the pre-petition arrears due as per the County's proof of claim filed on behalf of Snyder. (*Id.* ¶ 18.)

With respect to his charge of civil contempt, Debtor argues that a finding of contempt is warranted because the Bankruptcy Order was clear and unambiguous, yet the County and Snyder took no affirmative measures to ensure compliance with the same, and, in fact, their continued noncompliance led to Debtor's incarceration. (Debtor's Reply ¶¶ 33–34, ECF No. 139.) With respect to the alleged automatic stay violation, it is Debtor's position that the Family Court

ignored Debtor's bankruptcy filing and that only this Court could have granted relief from the automatic stay, which neither the County nor Snyder sought. (*Id.* ¶ 14.) Further, Debtor argues that none of the defenses raised by the County, including, but not limited to, sovereign immunity and Rooker-Feldman are valid in light of the express waiver of sovereign immunity found in § 106(a) and the lack of reviewable findings or a final order on the merits from the Family Court. (*Id.* ¶¶ 17, 23, 28.) Finally, Debtor argues that punitive damages are warranted because the County and Snyder acted in bad faith, after having been informed of the Debtor's bankruptcy filing and, more specifically, of the effect of the Confirmation Order authorizing the Trustee to make payments on the pre-petition arrears. (*Id.* ¶¶ 6–7.)

The County defends its actions on the substantive ground that it has taken no steps to enforce pre-petition arrears but, rather, has attempted to collect, on behalf of Snyder, only post-petition indebtedness and current child support obligations from Debtor. (Otsego County's Mem. of Law in Opp'n to Pet. at 1, which is docketed together with the Answer to Pet. by Otsego Cnty., ECF No. 138.). The County further contends that at the time of Debtor's arrest in August 2010, no unpaid pre-petition child support arrears were due. (Supplemental Grampp Aff. ¶ 12.) The County thus contends that its actions were not in violation of either the Bankruptcy Order, which only addressed pre-petition arrears, or the automatic stay provisions.

The County further states that the Bankruptcy Order lacked specificity and therefore cannot form a basis for civil contempt. In support of this argument, the County draws a distinction between the continued collection of pre-petition arrears and a Family Court contempt proceeding, suggesting that the Bankruptcy Order did not prevent the Family Court from proceeding to pursue Debtor for contempt under its own contempt procedures and powers. With regard to the automatic stay provisions, the County avers that its actions were excepted from the

automatic stay by § 362(b)(2)(B), because it sought to collect only post-petition child support and related expenses. (*Id.* at 3.)

Procedurally, the County advances numerous defenses to defeat Debtor's motion. Notwithstanding that the County set forth multiple defenses in its Answer to the Motion filed on February 21, 2011 (ECF No. 138), the Court focuses here on those defenses actively pursued during oral argument and through subsequent written submissions. First, the County contends that the state courts had concurrent jurisdiction to determine both the applicability of (1) any injunctive order that would have prohibited collection of child support payments, and (2) the automatic stay to a proceeding to "compel collection of child support." (*Id.* at 4.) The County next asserts that because the state courts properly exercised concurrent jurisdiction in the child support contempt and habeas corpus proceedings over the matters now in dispute, the Rooker-Feldman doctrine bars Debtor from challenging within the context of his bankruptcy proceeding the April 2009 Support Order, the July 2009 Violation Order, the September 2009 Violation Order, the September 2009 Order, and/or the August 2010 Order. (*Id.* at 6–8.) In support of this proposition, the County cites *In re Ivani*, 308 B.R. 132 (Bankr. E.D.N.Y. 2004), wherein the Honorable Elizabeth S. Stong followed the majority rule that state and federal courts have concurrent jurisdiction to determine the applicability of the automatic stay, *id.* at 135. Second, and in the alternative, the County contends that it is immune from an award of compensatory and/or punitive damages because the County relied upon a lawful order of the Family Court to procure Debtor's arrears. (Otsego Cnty.'s Mem. of Law in Opp'n to Pet. at 9.)

**DISCUSSION**

The County bears the burden of proving that the Motion is barred by the affirmative defenses it has raised, namely concurrent jurisdiction, Rooker-Feldman, and immunity, which the Court will address first.

The Court acknowledges the majority rule that federal and state courts have concurrent jurisdiction to determine the applicability of the automatic stay, *In re Ivani*, 308 B.R. at 135, *accord, e.g., Sisken v. Complete Aircraft Servs., Inc. (In re Siskin)*, 258 B.R. 554, 563 (Bankr. E.D.N.Y. 2001) ("a proceeding to determine whether the automatic stay applies to a prepetition state court action is a proceeding that arises in or is related to a bankruptcy case and, in the absence of a provision in Section 362 of the Bankruptcy Code or Section 157 of the Judiciary Code depriving state courts of jurisdiction, the state courts have concurrent jurisdiction to decide the issue"), but the rule does not benefit the County in the present case. Based on the record before it, the Court cannot find that the Family Court exercised concurrent jurisdiction to affirmatively decide–or even consider–whether the automatic stay applied to the proceeding before it. It is clear, however, that the events in Family Court took place post-petition and after this Court's issuance of the Bankruptcy Order.[4]

As there was no finding by the Family Court that could now be upset by this Court's determination of the Motion, and Debtor is not seeking to challenge the merits of the Family Court's orders, the County's reliance on the Rooker-Feldman defense is also misplaced. "Under the Rooker-Feldman doctrine, lower federal courts lack subject-matter jurisdiction over claims that effectively challenge state-court judgments." *Wilson v. Deutsche Bank Nat'l Trust (In re*

---

[4] Because the Court dismisses the County's concurrent jurisdiction defense for the reason that the Family Court record is devoid of a specific finding, it need not address whether the Family Court could have properly exercised concurrent jurisdiction in the first instance given the fact that Debtor's bankruptcy filing preceded the County and Snyder's prosecution of the Violation Petition.

*Wilson)*, 2011 U.S. App. LEXIS 3392, *2 (2d Cir. Feb. 18, 2011) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923)); *accord In re Siskin*, 258 B.R. at 564 (The Rooker-Feldman doctrine deprives a federal court of jurisdiction to adjudicate claims when the identical claims decided in the state court proceeding are raised in a subsequent federal proceeding or to the extent that the claims raised in the federal proceeding are "inextricably intertwined" with the state court's determinations.). As a prerequisite to its application, four elements must be met: "(1) The federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at *2–3 (internal citations and quotation marks omitted). Thus, it follows that "where claims were never presented in the state court proceedings and the plaintiff did not have the opportunity to present the claims in those proceedings, the claims are not . . . barred under the Rooker-Feldman doctrine." *In re Siskin*, 258 B.R. at 564. In this case, because the Family Court did not adjudicate the issue of the applicability of the automatic stay, and this Court's ruling on the Motion will not overrule the Family Court's multiple determinations finding Debtor to be in violation of its own prior order, the Rooker-Feldman doctrine is inapplicable.[5]

The County's sovereign immunity defense necessarily fails as well. Sovereign immunity, to the extent it is enjoyed in the first instance, is expressly abrogated by § 106(a) with respect to contested §§ 105 and 362 matters, subject to the limitation of subsection (a)(3) that prohibits an

---

[5] This case is distinguishable from both *Ivani* and *Siskin*. In the former case, "the issue of the scope and applicability of the automatic stay was litigated and decided in the Supreme Court contempt proceedings," *In re Ivani*, 308 B.R. at 137, while in the latter, "Justice DiNoto actually and necessarily decided the issue of whether the automatic stay applied (he found it did not) when he found that the Debtor was guilty of contempt of his court and therefore continued incarceration pursuant to the Order of Commitment."), *In re Siskin*, 258 B.R. at 560.

award of punitive damages against a governmental unit.  Because §§ 105(a) and 362(h) explicitly authorize recovery of costs and fees, in addition to compensatory damages, governmental units are subject to the imposition of such damages for violations of the automatic stay and actions adjudged to constitute civil contempt.  S. Elizabeth Gibson, *Congressional Response to Hoffman and Nordic Village: Amended Section 106 and Sovereign Immunity*, 69 Am. Bankr. L.J. 311, 332 (1995) (citing cases).  Further, by filing a proof of claim in the case, the County may be said to have effectively waived its state sovereign immunity pursuant to § 106(b).  *Fla. Dep't of Revenue v. Rodriquez (In re Rodriguez)*, 2010 U.S. App. LEXIS 3526, at *11 (11th Cir. Feb. 22, 2010).  While waivers of sovereign immunity must be strictly construed in favor of the government, *id.* (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983); *McMahon v. United States*, 342 U.S. 25, 27 (1951)), the County has failed to either address § 106 or to provide a sufficient legal basis to entitle it to immunity here.  Rather, the County asserts only that it acted in good faith in accordance with the Family Court's orders and rulings, which, in and of itself, does not render it immune from suit.

Having concluded that none of the County's defenses are applicable, the Court now turns to the facts underpinning the Motion.  As Debtor alleges two separate and distinct violations by the County and Snyder, namely civil contempt of the Bankruptcy Order and a violation of the automatic stay provisions of § 362, the Court will address each in turn.

"Undoubtedly included within the court's § 105(a) powers is the authority to find a party in civil contempt for noncompliance with [its] orders."  *French v. Am. Gen. Fin. Servs. (In re French)*, 401 B.R. 295, 314 (Bankr. E.D. Tenn. 2009).  Section 105(a) authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105(a). "The standard for finding a party in civil contempt is well settled. The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the Court. The burden then shifts to the contemnor to demonstrate why they were unable to comply." *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002) (quoting *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1229 (9th Cir. 1999) (citation omitted)); *accord In re Coastal Land Dev. Corp.*, 2009 Bankr. LEXIS 2940, *6–7 (Bankr. S.D. Miss. Sept. 15, 2009) (citing *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987)); *Nowlin v. RNR, LLC*, 2009 Bankr. LEXIS 2586, *14 (Bankr. M.D. Tenn. Aug. 27, 2009) (willfulness is not an element of civil contempt).

Preliminary, the Court must decide whether Debtor met his burden of showing that the Family Court proceedings in fact included and addressed pre-petition arrears. For the following reasons, the Court finds that he did. First, Debtor was nearly current at the time Retired Chief Judge Gerling issued the Bankruptcy Order, which the County acknowledged on the record. Second, as recorded in the County's own payment history dated February 17, 2011 (Grampp Aff., Ex. A), regular monthly child support payments were remitted directly to the County by Debtor's employers on a timely basis from May 7, 2007 forward, without interruption. Thus, it appears Debtor was in fact current post-petition, until January 2009, when his employer's direct payments were temporarily suspended. In July 2009, those payments resumed at the amended amount of $160.00 per month. Third, the County's own fiscal summary screen printout dated July 22, 2009 (Supplemental Grampp Aff., Ex. 4) fails to segregate post-petition arrears accumulated at the modified payment amount of $160.00 per month for a total of $1,608.00 from the pre-petition arrears carried forward in the amount of $1,634.00. Fourth, although there was a lengthy gap immediately preceding Snyder's initiation of the Family Court violation

proceedings, and there was a gap between the penultimate and the Trustee's final payment in a lump sum amount of $1,350.81, the County's payment history also shows payments from the Trustee in February 2007, May 2007, July 2007, January 2008, March through August 2008, July 2009, and October 2009. Absent a more definite explanation and accounting, including the specific months and monthly obligation amount for each such month, the Court cannot reconcile these factors with the County's repeated assertion that it and/or Snyder sought only post-petition arrears when the violation proceedings were commenced in Family Court in 2009. Accordingly, the Court's analysis does not end here.

Here, the County appeared in the bankruptcy case to oppose Debtor's request for injunctive relief, thus, the County does not dispute that it had knowledge of the Bankruptcy Order. While it contends that the Bankruptcy Order lacked specificity, the Court cannot discern how the Court's chosen language could have been clearer. The Bankruptcy Order explicitly prohibited the County and Snyder from continuing to pursue payment of pre-petition arrears, yet Debtor was eventually incarcerated, at least in part, for non-payment of pre-petition arrears not segregated or delineated in the Amended Violation Petition or the County's records from post-petition arrears due. This was the very result the Bankruptcy Order sought to guard against. Further, because the Bankruptcy Order prevented the County and Snyder from "taking any further action *to enforce* collection of the pre-petition child support arrears," the County cannot avoid a contempt finding by asserting that the Bankruptcy Order failed to prohibit Family Court contempt proceedings. The Bankruptcy Order did just that, albeit with respect to pre-petition arrears only. Under the facts of this case, the burden necessarily shifts to the County. The County has not demonstrated that it was unable to comply with the Bankruptcy Order, making it clear that, for whatever reason, the County followed its ordinary course in pursuing all

outstanding arrears, pre- and post-petition alike. Based on the foregoing, the Court finds the County in contempt of the Bankruptcy Order.

The Court now turns to Debtor's second alleged violation by the County and Snyder under § 362. Section 362(a)(1) bars "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . or to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). Section 362(a)(3) also bars "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3). In this case, even if inadvertently or by mistake, the County and Snyder sought by way of the Amended Violation Petition to recover a claim for pre-petition arrears from Debtor while he was a debtor in a Chapter 13 case. Where the automatic stay is willfully violated, § 362(h) provides that the injured individual "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." As articulated by the Second Circuit more than twenty years ago, "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990). An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages. *Id.*

As the County suggests, however, the reach of the automatic stay is not without limits. Section 362(b)(2) excepts from the automatic stay certain family law proceedings, including under subsection (b)(2)(B) "the collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B). The County points to this exception as being relevant here. For the reasons that follow, the Court disagrees.

"Unlike some of the other exceptions to the stay listed in § 362(b), this exception did not extend, prior to the [BAPCPA] amendments, to the commencement or continuation of proceedings to enforce an obligation."  3-362 Collier on Bankruptcy ¶ 362.05 (MB 2011).  As such, "[p]roceedings to enforce such orders were conspicuously omitted from the exception and were stayed, except in cases criminal in nature and permitted by § 362(b)(1)."  *Id*.  As one leading bankruptcy treatise suggests,

> Since proceedings to enforce alimony or support orders are normally continuations of earlier proceedings, the absence of language in section 362(b) excepting the continuation of enforcement proceedings from the stay casts significant doubt on whether such proceedings are included in the exception to the automatic stay, even when they do not seek to collect from property of the estate. . . . . Unless the word 'collection' is interpreted to encompass the continuation of a proceeding for the purpose of collecting, a proceeding to enforce an earlier support or alimony order is barred by the automatic stay.  Since other exceptions to the stay specifically speak of enforcements of judgments, it is unlikely that such an interpretation was intended.

1-5 Collier Family Law and the Bankruptcy Code ¶ 5.03 (MB 2011).  This Court finds Collier's reasoning to be persuasive and it seems that the BAPCPA amendments only strengthen this interpretation:

> [T]he 2005 amendments, while permitting the withholding of income pursuant to a judicial or administrative order or statute, as well as various other specific enforcement steps such as tax intercepts, suspension of licenses, and reporting to consumer credit agencies, also did not create a general exception for enforcement of domestic support obligations or for the commencement or continuation of a proceeding to enforce domestic support obligations.  Indeed, Congress used the word enforcement specifically in new section 362(b)(2)(G), relating to medical obligations, which suggests that the failure to broadly permit all other support enforcement was intentional.

*Id.*; *But see In re Johnston*, 321 B.R. 262, 278 (D. Ariz. 2005) (rejecting Collier's and holding instead that "[t]he plain meaning of the word 'collection' in § 362(b)(2)(B) as well as the legislative history of that section support the conclusion that 'collection' as used in the statute extends to active proceedings to enforce alimony, maintenance, and support obligations.").

However tempting it may be to unqualifiedly protect a debtor's paramour, spouse, or children, exceptions to the automatic stay must be narrowly construed and relief from the automatic stay is readily available should a creditor choose to pursue that course. For these reasons, the Court cannot, as did the Honorable Robert C. Broomfield in *Johnston*, read such broad meaning into § 362(b)(2)(B). Accordingly, the Court must find that the County and Snyder also violated the automatic stay by premising the Amended Violation Petition, at least in part, on pre-petition arrears during the pendency of Debtor's bankruptcy case.[6]

## CONCLUSION

In summary, the Court finds the County and Snyder violated both the Bankruptcy Order and the automatic stay provisions of § 362, and the County is not immune from the consequences of the same. As damages must now be assessed, the Court, by separate order, will schedule an evidentiary hearing to determine damages.

It is so ORDERED.

Dated at Utica, New York
this 1st day of July 2011

                                                         /s/ Diane Davis
                                                         DIANE DAVIS
                                                         United States Bankruptcy Judge

---

[6] The Court recognizes that there may be a valid argument to except the Family Court proceedings from the automatic stay under § 362(b)(1) given the language of the April 2009 Support Order and the July 2009 Violation Order, both of which caution Debtor that his "willful failure to obey this order may result in incarceration for criminal non-support or contempt." *See* 11 U.S.C. § 362(b)(1) (the filing of a bankruptcy petition "does not operate as a stay under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor"); *see also* 1-5 Collier Family Law and the Bankruptcy Code ¶ 5.03 (discussing case law applying the § 362(b)(1) exception to contempt proceedings in various jurisdictions). Because this argument was not advanced by the County or Snyder in the present matter, it must await another day.