UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

    DONALD J. JENKINS, SR.,                    Chapter 7
                                                                    Case No.: 05-73127

                                          *Debtor*.
_____

APPEARANCES:

Carol Malz, Esq.
*Attorney for Debtor*
554 Main Street, P.O. Box 1446
Oneonta, New York 13820

Barbara J. Snyder
1185 County Highway 11
Laurens, NY 13796

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

This matter is presently before the Court upon the motion of Donald J. Jenkins, Sr. ("Debtor") pursuant to 11 U.S.C. §§ 105(a) and 362(h),[1] filed January 2, 2011 (the "Motion," ECF No. 131), asking that the Otsego County Department of Social Services or, more specifically, the Otsego County Support Collection Unit (the "County") and Barbara Snyder ("Snyder"), the mother and custodial parent of two of Debtor's minor children, be held in civil contempt for violating both a prior order of this Court granting an injunction restraining the County and Snyder from taking any action to enforce collection of pre-petition child support arrears and the automatic stay provisions of § 362. On July 1, 2011, the undersigned issued a

---

[1] Debtor filed a voluntary petition for Chapter 13 relief on October 16, 2005, one day prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Debtor's case is, therefore, governed by pre-BAPCPA Title 11, 11 U.S.C. §§ 101–1330 (2004).

Memorandum-Decision and Order finding the County and Snyder liable to Debtor for damages (the "July 2011 Decision"). *In re Jenkins*, 2011 Bankr. LEXIS 2539 (Bankr. N.D.N.Y. July 1, 2011.)

On January 1, 2012, the Court issued a Scheduling Order setting an evidentiary hearing on damages for July 26, 2012. (ECF No. 173.) On that date, the Court issued an Order approving a Stipulation of Discontinuance entered into between Debtor and the County. (ECF No. 189.) At the July 26, 2012 hearing, Debtor appeared through counsel to present documentary and testamentary evidence and Snyder appeared pro se to rebut same. Debtor submitted his Post-Trial Brief on August 26, 2012 ("Debtor's Brief," ECF No. 193), wherein he requests actual damages in the aggregate amount of $75,139.82, together with an unspecified amount of punitive damages. Snyder submitted her response on August 30, 2012 ("Snyder Reply," ECF No. 195), wherein she states that her sole intention was not to violate bankruptcy law but rather to seek what was rightfully owed to the parties' daughters by Debtor under state law and court orders.

## JURISDICTION

The Court has jurisdiction over the parties and the subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and 157(b)(2)(A).

## FACTS

The relevant facts underlying the Court's determination of liability are set forth in the July 2011 Decision, with which the Court now assumes familiarity. It bears repeating here, however, that as a result of Snyder's actions, when Debtor appeared at the United States Courthouse in Binghamton, New York for his post-conversion § 341 meeting of creditors on August 9, 2010, the Otsego County Sherriff's Department (the "Sherriff's Department")

apprehended and incarcerated Debtor for a period of seventeen days pursuant to a September 24, 2009 Warrant of Arrest issued by the Otsego County Family Court.[2]

At the damages hearing, the Court heard testimony from three individuals: Debtor; Debtor's spouse, Madeline Jenkins; and Debtor's mother-in-law, Dorothy Reina. Debtor testified that he and his family relocated to Florida in July 2009 because his mother had an apartment in Florida and he believed his employment prospects were better in Florida than in New York. From October 2009 through July 2010, Debtor obtained employment through Spherion Staffing Services ("Spherion"). (Debtor's Ex. 3.) Debtor testified that when he returned to New York in July 2010 to attend his daughter's graduation he was unaware of the outstanding warrant for his arrest. He further testified that he would not have voluntarily returned to New York had he known of same. When Debtor appeared at the United States Courthouse on August 9, 2010, he was accompanied by the following family members: his wife; his nine year old son, Donald, Jr.; his nineteen year old stepdaughter, Cortney; and his sixteen year old stepdaughter, Shania. Debtor and his family had their car packed to return to Florida following Debtor's § 341 appearance. When Debtor entered the Courthouse, however, the Sherriff's Department immediately apprehended, handcuffed, and transported him to the Otsego County Correctional Facility in Cooperstown, New York. (Debtor's Ex. 1.)

## ARGUMENTS

Debtor contends that he is entitled to an award consisting of actual and compensatory damages for emotional distress, lost wages, attorneys' fees, and costs. Debtor further submits that the circumstances of this case justify an award of punitive damages against Snyder in an

---

[2] Notwithstanding the Court's prior adjudication of liability, Debtor produced and the Court admitted into evidence notes from an August 9, 2010 telephone conversation between a County representative and Snyder indicating that Snyder had called the County to inform them that Debtor would be making an appearance at the United States Courthouse in Binghamton, New York on the date of his arrest. (Debtor's Ex. 7.) The County in turn relayed this information to the Otsego County Sheriff's Department to facilitate Debtor's arrest.

amount to be determined by the Court. Categorically, Debtor requests $50,000.00 for compensation of his and his family's emotional distress; $5,687.50 for reimbursement of attorneys' fees paid to his family law attorney, Kevin F. Guyette; $9,614.32 for reimbursement of attorneys' fees and costs due to Attorney Malz; $2,500.00 for reimbursement of lost wages; $110.00 for reimbursement of costs paid to First-Choice Reporting Services ("First-Choice") in connection with Debtor's telephonic § 341 meeting; and $7,228.00 for child support that Debtor contends would not have been due had he been permitted to telephonically appear at a hearing in support of his December 23, 2009 Petition for Modification of an Order of Support ("2009 Modification Petition").[3] (Debtor's Ex. 8.)

In support of his request for emotional distress damages, Debtor testified that his wife and children were visibly upset witnessing his arrest and that he was "angry, very upset, didn't understand . . . , couldn't understand what was going on." Once at the Correctional Facility, he was fingerprinted, photographed, questioned about the presence of tattoos and body markings and required to take a cold shower before being transported to a holding cell for medical clearance where he remained for five days. Throughout the course of his incarceration, he was "angry, upset, and didn't understand why he was there or what was being done to get [him] out."

---

[3] Debtor did not fully develop this argument either at the hearing or in his Brief, but the Court notes that Debtor filed the 2009 Modification Petition approximately three months after the Honorable Brian D. Burns issued the September 29, 2009 state court order of contempt that precipitated Debtor's arrest. *See In re Jenkins*, 2011 Bankr. LEXIS 2539, at *9 (providing the complete state court factual background). During the course of this proceeding Debtor also submitted a Notice to Appear in Court issued by the Otsego Family Court on January 11, 2010, therein indicating that Debtor was not eligible to appear telephonically in support of the 2009 Modification Petition (Debtor's Ex. 9), and a January 27, 2010 Order of Dismissal based upon Debtor's withdrawal of the 2009 Modification Petition (Debtor's Ex. 10). Debtor submitted another Petition for Modification of Support on December 20, 2010 (Debtor's Ex. 11), and an Order Modifying an Order of Support issued by Support Magistrate Richard E. Brown on February 28, 2011, therein reducing his weekly support obligation to $21.00 (Debtor's Ex. 12). In his Brief, Debtor states that had his 2009 Modification Petition been heard telephonically, the same would have been granted and he would have saved $139.00 for a period of fifty-two weeks, or $7,228.00. (Debtor's Brief at 4–5.) Debtor then concludes that because the "$7,228.00 is now part of the child support arrears that . . . Debtor is required to pay to Barbara Snyder, and as such, part of the damages that . . . Debtor has incurred as a result of the contempt and violation of the automatic stay." (Debtor's Brief at 5.)

Ms. Jenkins testified that the parties' son had nightmares and that all three children who witnessed the arrest couldn't stop crying because they were confused and uncertain whether Debtor would have to serve the full six month sentence that had been ordered or whether they would be able to return to Florida. Debtors' stepdaughters were enrolled at that time at Leesburg High School in Leesburg, Florida (Debtor's Ex. 4), and they were delayed in starting the school year due to their inability to timely return to Florida. Ms. Jenkins suffered her own form of distress in that she was unable to sleep or eat, and she was required to apply to the County for emergency assistance to support the family during the period of Debtor's incarceration. As to Debtor's mental state, Ms. Jenkins testified that the arrest caused animosity between her and Debtor, as Debtor became "angry, short-tempered, and mistrusting."

When asked about the impact of the arrest on his life, Debtor testified that he was stressed because he could not help his family and that it was a "very bad" situation that he would never care to repeat. Debtor submits that his arrest and imprisonment caused emotional distress that was "readily apparent from the testimonies in this case." (Debtor's Brief at 3.) He asks that the loss of liberty and emotional distress be compensated at a rate of $500.00 per day, or $50,000.00. Moreover, as to the length of the incarceration, Debtor testified that he was transported to a hearing on August 25, 2010, at which time he thought he would be released, but he was taken back to jail for an additional night upon learning that Snyder wanted to be in court prior to his release.

In support of his request for legal fees and costs, Debtor produced evidence of legal bills in the amount of $5,687.50 owed to Attorney Guyette (Debtor's Ex. 2), and $9,337.50 for attorneys' fees plus $26.82 for expenses owed to Attorney Malz (Debtor's Ex. 6). Debtor also requests $250.00 for a separate attorney fee billed by Attorney Malz and expenses in the amount

of $110.00 billed by First-Choice in connection with his successful motion to waive his appearance at the § 341 meeting because he was unable to attend the original meeting due to his incarceration or any adjourned meetings due to his financial inability to return to New York. (Debtor's Ex. 5.)  First-Choice provided the notary public to administer the oath and to certify same to the case trustee at Debtor's telephonic § 341 meeting pursuant to the Court's November 28, 2010 Order Excusing Debtor from Appearance at First Meeting. (Debtor's Ex. 5.)  All three witnesses testified that Ms. Reina provided Debtor with a $5,000.00 loan to pay Attorney Guyette's retainer fee.  At the time of the hearing, Debtor was still attempting to repay this loan with interest.  Debtor did not, however, provide the Court with the applicable interest rate or payment schedule.

As proof of Debtor's lost wages, Debtor provided pay records from Spherion allegedly showing that he earned approximately $400.00 per week from May 2010 until his incarceration. (Debtor's Ex. 3.)  Debtor also produced a February 15, 2012 letter from Katie Moberg, Manager at Spherion, indicating that Debtor lost an employment opportunity due to his inability to timely return to Florida in August 2010 as a result of the incarceration.  (Debtor's Ex. 3.)  Debtor therefore requests reimbursement for six weeks of employment to account for the time that he was detained in New York and the additional time it took for him to secure a new position in Florida.  Finally, Debtor requests an additional $100.00 for one day's lost pay and incurred transportation costs for him to travel to First-Choice in Tavares, Florida.

In her Reply, Snyder states that Debtor never told her or their daughters that he had relocated to Florida and she acknowledges that upon learning that Debtor was visiting New York, she called the County to ask what she could do to collect Debtor's support obligations.  At that time, the County advised her that a warrant had been issued for his arrest, and she indicated

that Debtor was to appear in Bankruptcy Court the morning before he headed back to Florida. (Snyder's Reply at 4–5.) Following Debtor's incarceration, Snyder did ask to be present to speak with the Judge before Debtor was released from jail, but she insists that at that time, and during the course of all the parties' dealings, she was only trying to abide by the state court orders and child support guidelines. (Snyder's Reply at 2.) Whereas Debtor asks the Court when assessing the amount of damages to be awarded herein to consider that any monies recovered will result in taxable income (Debtor's Brief at 6), Snyder conversely asks the Court to consider that she is currently unemployed, having closed her real estate office in April 2012, financially distressed, and continuing to support the parties' daughters who reside in her home. (Snyder's Reply at 7.)

## DISCUSSION

Under former § 362(h), a debtor has a private right to bring an action against any person who willfully violates the automatic stay. *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008). In order for the debtor to recover damages he must prove by a preponderance of the evidence that he was injured by the willful violation. *Caffey v. Russell (In re Caffey)*, 384 B.R. 297, 304–05 (Bankr. S.D. Ala. 2008) (citing cases). In addition to actual damages in the form of reasonable attorneys' fees, costs, and lost wages, this Court previously held that a debtor can also recover for emotional distress damages upon a showing of "'clear evidence to establish that significant harm occurred as a result of the violation.'" *In re Burkart*, 2010 Bankr. LEXIS 385, at *13–14 (Bankr. N.D.N.Y. Feb. 9, 2010). The debtor must, however, demonstrate a causal connection between a significant emotional harm and the willful conduct. *Id.* at *15. Punitive damages may also be awarded for a willful violation of the stay where there is an actual finding of maliciousness or bad faith on the part of the offending creditor. *Id.* at *21 (citing *In re*

Case 05-73127-6-dd    Doc 197    Filed 01/02/13    Entered 01/02/13 16:21:55    Desc Main
Document      Page 8 of 12

8

*Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990)). In determining same, the Court will examine the following factors: (1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor. *Id.* (citing cases).

In the present case, Debtor has satisfied his burden of proving that he was injured by Snyder's actions and that there was a causal connection between those actions and the harm that ensued. The emotional distress suffered by Debtor, lost wages, attorneys' fees, and costs are directly attributable to the jailing of Debtor. The lost wages, attorneys' fees, and costs are readily determined by the records admitted into evidence. The Court therefore finds that an award to compensate Debtor for the lost wages and costs requested is warranted in light of the evidence presented.

As to Debtor's lost wages, the Court's review of Debtor's work records reveals that Debtor worked approximately one hundred and thirty hours per month, or four and a half hours per day, on average from April 2010 through July 2010. (Debtor's Ex. 3.) The Court deduces from Debtor's pay records that Debtor's net pay during these months of temporary employment amounted to approximately $8.00 per hour. Because Debtor was reemployed by September 2010 and earned a paycheck for the pay period ending on September 5, 2010, he will be compensated for the balance of August 2010, or twelve business days from August 16, 2010 through August 31, 2010, at a rate of $8.00 per hour for four and a half hours per day. The award for total lost wages, therefore, amounts to $432.00.

The attorneys' fees demanded must also be carefully scrutinized and reduced. The Court will not award twenty four and one-quarter hours of time billed by Attorney Malz at the billed hourly rate of $150.00 per hour (Debtor's Ex. 6), or $3,637.50, because it deems certain services

to have been related to Debtor's pursuit of the County and, as such, more appropriately included in Debtor's settlement with the County (*see* Stipulation of Discontinuance, ECF Nos. 189, 192), duplicative of the services performed and billed by Attorney Guyette (Debtor's Ex. 2), or purely administrative in nature.

Specifically, Attorney Malz's time records include more than seventeen hours of services under the heading "Appeal to U.S. District Court by Creditor," which relate to the County's appeal of the July 2011 Decision. Only the September 3, 2011 and September 6, 2011 entries correspond to Snyder's limited involvement in the appeal, for a cumulative period of ninety minutes. Accordingly, the other time entries totaling more than fifteen and a half hours under this heading will not be awarded as against Snyder. In addition, the Court also reduces or declines to award the following time entries: (1) 8/18/10, "Trip to Otsego County Jail," etc., reduced by half (forty-five minutes) to account for travel time reduction; (2) 8/24/10, "*Habeas Corpus* hearing in Cooperstown" (two hundred and ten minutes), disallowed as duplicative of the 8/24/10 entry of Attorney Guyette; (3) 8/25/10, "Hearing continued in Cooperstown" (one hundred and eighty minutes), disallowed as duplicative of the 8/25/10 entry of Attorney Guyette; (4) 1/2/11, "Forwarding of filed papers to client" (fifteen minutes), disallowed as administrative; (5) 8/4/11, "Settlement letter to Attorney Miller" (forty-five minutes), disallowed as related to Debtor's settlement with the County; (6) 4/14/12 (ten minutes), "Receipt and review of Attorney Miller's 4/10/12 letter. Search of dates," disallowed as related to Debtor's settlement with the County; and (7) 4/21/10, "Receipt and review of Attorney Miller's 4/18/12 letter and Demands. Copies to client," disallowed as related to Debtor's settlement with the County. In total, the Court awards attorneys' fees in the amount of $11,887.50, comprised of $5,687.50 billed by Attorney Guyette, $5,700.00 billed by Attorney Malz, and $250.00 billed by Attorney Malz in

connection with obtaining an Order permitting Debtor's telephonic § 341 appearance. The Court also awards costs in the amount of $26.82 billed by Attorney Malz, and costs in the amount of $110.00 paid to First-Choice.

While Debtor has also proven his entitlement to emotional distress damages in this case, it is more difficult for the Court to place a value on Debtor's suffering and emotional distress caused by the stay violation. As a starting point, the Court has reviewed stay violation decisions of other courts in cases where child support was at issue. *See In re Repine*, 536 F.3d at 517 (bankruptcy court awarded $4,400.00 in emotional distress damages where an attorney opposed the debtor's post-petition release from jail in a child support collection action due to the non-payment of her court-ordered attorney's fees causing the debtor to miss his father's funeral); *In re Caffey*, 384 B.R. at 310 (bankruptcy court awarded $5,000.00 in emotional distress damages where the debtor, a former professional athlete trying to establish himself in a business, was jailed for nine days and his incarceration publicized). Debtor and Ms. Jenkins credibly testified to the emotional distress suffered by Debtor but both witnesses provided only generalized assertions of the emotional harm caused. The Court, therefore, concludes that Debtor is entitled to some compensation for having been jailed for a period of time but in an amount far less than the $50,000.00 that Debtor has requested. Rather, the Court awards $1,000.00 to Debtor to compensate him for the emotional distress caused by his incarceration.

Debtor also seeks an award of punitive damages on the grounds that "Debtor's arrest was timed by . . . Snyder," "[s]he is the one who requested his arrest at the Meeting of Creditors," [s]he never informed . . . Debtor of the arrest warrant, and did not have it executed when . . . Debtor was in New York for their daughter's graduation," and "[s]he and the County kept . . . Debtor in jail an extra day, just so . . . Snyder could make an appearance." (Debtor's

Brief at 6). "The purpose of punitive damages is to punish a stay violation when it is particularly egregious and/or when it is necessary to insure the violator understands the severity of the offense." *In re Caffey*, 384 B.R. at 310 (collecting cases).

In this case, Snyder's conduct was not malicious, which is a necessary predicate to punitive damages. She did not act with maliciousness or bad faith so as to warrant punitive damages. Her conduct was not egregious. Rather, Snyder vehemently asserts that her sole intention at all times was to abide by the state court orders and to secure for the parties' daughters the support that was due to them from Debtor. Under the circumstances, the Court believes that Snyder acted with the best of intentions. Further, it is not clear from the record that Snyder desired or singlehandedly caused Debtor's period of incarceration to be lengthened by one day. Accordingly, the Court will not award punitive damages.

## CONCLUSION

For the foregoing reasons, Debtor is entitled to an award of actual damages for emotional distress, attorneys' fees, and costs. Debtor is not entitled, however, to an award of punitive damages.

Therefore, it is hereby

ORDERED, that Debtor is awarded a judgment against Snyder for attorneys' fees of Attorney Guyette in the amount of $5,687.50; and it is further

ORDERED, that Debtor is awarded a judgment against Snyder for attorneys' fees and costs of Attorney Malz in the amount of $5,950.00; and it is further

ORDERED, that Debtor is awarded a judgment against Snyder for costs paid to First-Choice in the amount of $110.00; and it is further

ORDERED, that Debtor is awarded a judgment against Snyder for lost wages in the amount of $432.00; and it is further

ORDERED, that Debtor is awarded a judgment against Snyder for emotional distress damages in the amount of $1,000.00; and it is further

ORDERED, that Debtor's request for punitive damages is denied; and it is further

ORDERED, that Debtor's counsel shall submit a judgment in the amount of $13,179.50 in conformance with this Memorandum-Decision and Order; and it is further

ORDERED, that such judgment shall be reduced by the settlement amount paid to Debtor by the County, provided that the County paid a settlement amount in excess of the legal fees in the amount of $2,340.00 carved out herein for Attorney Malz's services related to the County's appeal.

It is so ORDERED.

Dated at Utica, New York
this 2nd day of January 2013

/s/DIANE DAVIS_____
DIANE DAVIS
United States Bankruptcy Judge